IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CARLA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE NO.: |
| v. | ) |
| | ) |
| HENRY COUNTY, GEORGIA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Carla Brown ("Plaintiff") respectfully submits the following Complaint:

## INTRODUCTION

1. Plaintiff is a former employee of Henry County, Georgia ("Defendant" or "Henry County"). Plaintiff asserts claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII"). Additionally, Plaintiff asserts claims of disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA").

1

2. Plaintiff seeks declaratory and injunctive relief, back pay and lost benefits, front pay, punitive damages, compensatory damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

## JURISDICTION AND VENUE

3. Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

4. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

5. Plaintiff is a resident of McDonough, Georgia and submits herself to the jurisdiction of this Court.

6. Defendant Henry County is a government subdivision of the State of Georgia as established in Article IX of the Georgia State Constitution.

7. Defendant may be served with process by serving a copy of the Complaint and Summons on the Chair of the Henry County Board of Commissioners, Carlotta Harrell, Henry County Administration Building, 140 Henry Parkway, McDonough, GA 30253, if service of process is not waived.

8. Defendant is an employer as defined by the ADA and Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has satisfied all administrative prerequisites to perfect her claims of gender discrimination, disability discrimination, failure to accommodate, and retaliation under Title VII and the ADA. Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

10. Plaintiff has now received the Notice of Right to Sue from the Department of Justice for her claims within the last ninety (90) days.

## FACTUAL ALLEGATIONS

11. Plaintiff began her employment with Defendant (for a second time) in November 2017 when she was hired by Defendant in the position of Commercial Building Inspector with the Building & Plan Review Department.

12. During February/March 2020 Plaintiff was diagnosed with a rare condition called idiopathic intracranial hypertension where cerebrospinal fluid builds up around the brain causing increased pressure inside the skull. Plaintiff also had a bulging disk in her neck and back and an annular tear in her neck.

13. These medical conditions substantially limited one or more of Plaintiff's major life activities.

14. Defendant initially attempted to accommodate Plaintiff's physical limitations caused by her medical conditions by placing her on light duty work.

15. In November/December 2020 a new Building & Plan Review Director, Prentiss Redding, male, was hired.

16. Plaintiff was the only female Commercial Building Inspector that reported to Redding.

17. Soon after Redding was hired, Plaintiff informed him of her medical conditions and physical limitations. Specifically, Plaintiff told Redding that she needed to have radio frequency ablation treatment on her neck and back which would take her out of work for an extended period of time.

18. Redding requested that Plaintiff hold off on those treatments until he got his feet wet in his new position. Plaintiff agreed to hold off on those treatments.

19. Prior to Plaintiff going on her initial leave of absence and continuing throughout the remainder of her employment, Defendant had a job opening for a Building Plan Review Specialist for which Plaintiff was well qualified and which was primarily a sedentary working position that Plaintiff could have performed full time.

20. Several times, Plaintiff requested to transfer to the open Building Plan Review Specialist job position as a reasonable accommodation under the ADA.

21. Plaintiff even applied for the open Building Plan Review Specialist job position, but she never received an interview.

22. Redding told Plaintiff that she could not transfer to that position because she did not have the required certifications. However, upon information and belief, the two males that were in that position had less certifications than Plaintiff.

23. Instead of transferring Plaintiff to the open Building Plan Review Specialist job position, or about February 2021, Redding called Plaintiff's neurologist directly and asked the neurologist to change Plaintiff's restrictions because he felt they were too restrictive. Plaintiff's neurologist said no.

24. On or about March 19, 2021, Plaintiff went on a leave of absence to have brain surgery to relieve the pressure inside her skull and to prevent loss of vision.

25. Plaintiff's doctor's note said that she needed to be out of work for 12 weeks.

26. On June 10, 2021 Plaintiff's FMLA leave was exhausted.

27. On June 17, 2021, Plaintiff's doctor wrote a note releasing her to work on August 10, 2021.

28. Plaintiff requested additional unpaid leave as a reasonable accommodation under the ADA.

29. On or about June 30, 2021, Defendant sent Plaintiff a letter stating that after consideration of her leave history, medical documentation, and the needs of the department, the request for extended leave was not approved.

30. The letter further stated that she must return to work on July 12, 2021, or face termination.

31. Plaintiff returned to work on or about July 12, 2021, despite her doctor telling her that if she returned to work it would be against his medical advice. However, because Defendant told Plaintiff she would be terminated if she did not return, Plaintiff had no option but to return to work against her doctor's medical advice.

32. Plaintiff showed up to work promptly at 7:45AM on July 12, 2021. Plaintiff was informed that she needed a medical release to return back to work and that without one she must go home.

33. Plaintiff told Redding that her doctor's note did not release her until August but that she would do the best she could to get a doctor's note releasing her back to work. Redding told Plaintiff that if she did not have a release by Wednesday, July 14, she would be terminated.

34. Plaintiff then went back to her doctor and told him that if she was not released back to work, she would be terminated.

35. Although Plaintiff's doctor told Plaintiff that he would write the note, the doctor told Plaintiff that he strongly advised that she not return to work and again said that if she did return to work, it was against his medical advice.

36. On July 14, 2021 Plaintiff submitted a doctor's note to Defendant releasing her to work with light duty restrictions.

37. Defendant did not accommodate Plaintiff's light duty restrictions and never even engaged in the interactive process with Plaintiff.

38. That same day, Defendant's Human Resources Department personnel and Redding sat Plaintiff down and told her she had missed a significant amount of work in the last year and accused Plaintiff of FMLA fraud.

39. Specifically, they said they found it strange that Plaintiff went out on leave shortly after her FMLA leave renewed when—in reality—Plaintiff was dealing with a serious medical condition and needed to have brain surgery or possibly face medical complications including blindness or even death.

40. It was clear to Plaintiff that Defendant was trying to find an excuse to terminate her employment.

41. Moreover, following Plaintiff's leave of absence, whenever Plaintiff would mention her restrictions or medical conditions, Redding would immediately state that he did not care about her restrictions or medical conditions.

42. In September 2021, Plaintiff was issued a disciplinary action for reasons that were simply not true.

43. Specifically, Plaintiff was told that a police officer had filed a complaint against her. When Plaintiff requested the police officer's complaint, it was not provided. This was the first and only disciplinary action Plaintiff had received at Defendant during her long employment tenure.

44. Similarly situated male employees had engaged in the same alleged conduct and were not terminated.

45. Moreover, following Plaintiff's leave of absence, she was asked to help assist train the new Commercial Building Inspectors, which she did. When Plaintiff was asked if she would get incentive pay for this training, she was told no.

46. However, Jake Smith, male, another Commercial Building Inspector that reported to Redding, received incentive pay for training the new Commercial Building Inspectors.

47. Redding even told the new Commercial Building Inspectors that Plaintiff knew twice as much as Smith.

48. On or about September 22, 2021, Plaintiff experienced a serious medical event while working and she could not pick up her legs. Upon information and belief, this medical event occurred because Plaintiff returned to work too quickly

after the surgery and her light duty restrictions were not being accommodated. Plaintiff immediately went to the doctor and the doctor placed her on another leave of absence.

49. The doctor's first note stated that Plaintiff could return to work on October 1, 2021. However, on September 30, 2021, Plaintiff's doctor issued a second note that extended the leave until October 11, 2021.

50. Plaintiff immediately emailed Redding on September 30, 2021 at 3:17PM with the doctor's second note attached.

51. By USPS First Class mail Plaintiff received a letter from Defendant dated October 5, 2021 stating that she was terminated for job abandonment. The letter stated that Plaintiff had submitted medical documentation stating that she would be able to return to work on October 1, 2021, however, it was alleged Plaintiff had been absent from work without approval on October 1, 4 and 5, 2021.

52. However, this was simply not true as Plaintiff sent Redding a note on September 30, 2021, stating that she needed to be excused from work until October 11, 2021.

53. Because Defendant sent Plaintiff the letter by mail, Plaintiff did not receive this letter until after October 10, 2021.

54. Henry County Board of Commissioners Policies and Procedures 1.13.02 states the following:

> 3. Before an employee is separated for disability, a reasonable effort shall be made by the county to locate an alternative position within the county for which the employee may qualify. If there are no available positions within the county for which the employee may qualify with or without reasonable accommodation the employee shall be separated for disability.
>
> 4. In the event the employee qualifies for and is offered an available position for which he/she can perform the essential job functions with or without reasonable accommodation and the employee declines the position(s) the employee shall be considered to have resigned from Henry County employment.

55. The Building Plan Review Specialist job position for which Plaintiff had applied had not been filled by Defendant at the time of Plaintiff's termination.

56. Moreover, an employee can be separated for disability which, upon information and belief, would provide the employee with retirement and health benefits that are not available to an employee that is otherwise involuntarily terminated.

## COUNT I
### Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

57. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

58. Plaintiff is a member of a protected class in that she is female.

59. At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. §2000e *et seq.*

60. At all relevant times, Defendant was an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e *et seq.*

61. Defendant discriminated against Plaintiff based on her gender in violation of Title VII by taking adverse actions against her, including but not limited to: (a) forcing her to return to work against her doctor's judgment; (b) issuing her disciplinary actions based on false information; (c) refusing to consider her request for a job transfer; and (d) terminating her employment.

62. Plaintiff was the only female Commercial Building Inspector that reported to Redding.

63. Defendant marginalized Plaintiff while treated similarly situated male employees more favorably.

64. For example, Redding told Plaintiff that she could not transfer to the Building Plan Review Specialist position because she did not have the required certifications. However, upon information and belief, the two males that were in that position had less certifications than Plaintiff.

65. Defendant lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or such purported justifications are mere pretext for gender discrimination.

66. The above-pled actions of Defendant constitute gender discrimination in violation of Title VII.

67. The actions of Defendant in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

68. Plaintiff's gender was a motivating factor in the decisions by Defendant to subject her to discrimination on the basis of her gender as pled above, even if gender was not the sole factor that motivated the decision of Defendant to subject Plaintiff to gender discrimination.

69. As a direct and proximate cause of Defendant's unlawful employment actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

70. Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory damages for emotional distress, punitive damages, front pay, and all other legal and equitable remedies provided for by Title VII.

## COUNT II
### Disability Discrimination in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*

71. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

72. At all times relevant hereto, Defendant Henry County has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

73. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A).

74. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(B) inasmuch as she has a record of an impairment as defined by the Act.

75. At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(C) inasmuch as she was regarded as a person with an impairment as defined by the Act.

76. Defendant Henry County is, and at all times relevant to this litigation was, aware of Plaintiff's disability and history and record of disability.

77. Plaintiff is, and at all times relevant hereto was, a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential function of her job.

78. Defendant Henry County discriminated against Plaintiff in violation of the ADA by taking adverse actions against her, including but not limited to: (a) forcing her to return to work against her doctor's judgment; (b) issuing her disciplinary actions based on false information; (c) refusing to consider her request for a job transfer; and (d) terminating her employment.

79. Defendant Henry County's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

80. As a direct and proximate result of Defendant Henry County's intentional discrimination, the Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, in an amount to be established at trial.

81. In addition, Defendant Henry County's actions have caused, and continue to cause, the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

82. Moreover, Defendant Henry County's actions have caused stress that has aggravated Plaintiff's medical condition and caused increased medical bills, in an amount to be established at trial.

## COUNT III
**Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

83. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

84. Plaintiff was, with or without a reasonable accommodation, capable of performing the essential functions of her job.

85. Defendant failed to accommodate Plaintiff's accommodation requests under the ADA.

86. Defendant failed to accommodate Plaintiff's request under the ADA for light duty work.

87. Defendant refused to transfer Plaintiff to the Building Plan Review Specialist job position for which Plaintiff had applied.

88. Transferring Plaintiff to the position of to the Building Plan Review Specialist would not have imposed an undue hardship on Defendant's operations.

89. Moreover, Defendant refused to reasonably accommodate Plaintiff by granting her reasonable request for additional unpaid leave.

90. Granting Plaintiff's request for additional unpaid leave would not have imposed an undue hardship on Defendant's operations.

91. Additionally, Defendant failed to engage in the interactive process with Plaintiff following both of her leaves of absences.

92. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

93. Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against it.

### COUNT IV
**Retaliation in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

94. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

16

95. Plaintiff engaged in protected conduct by requesting ADA accommodations, including the ability to do light duty work, transfer to another position, and additional unpaid leave, and by requesting leaves of absences due to her medical conditions.

96. The Defendant retaliated against the Plaintiff for engaging in protected conduct.

97. Specifically, Defendant issued Plaintiff a disciplinary action and ultimately terminated her employment (without even first giving her the option to resign per policy).

98. Defendant's actions in retaliating against Plaintiff following her accommodation requests and leaves of absences were committed with reckless disregard for her right to be free from discriminatory treatment because of her opposition to discriminatory practices in violation of the ADA.

99. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

100. Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct

recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against it.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff punitive damages;

(g) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 14th day of November, 2023.

                                                *s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE LAW FIRM, LLC
695 Pylant Street N.E., Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973
jackie@leelawga.com

**COUNSEL FOR PLAINTIFF**